UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| THOMAS A. GAUTHIER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 15-cv-4082-JES |
| SHAN JUMPER, et al., | ) |
| Defendants. | ) |

## SUMMARY JUDGMENT ORDER

Now before the Court for consideration are two motions for summary judgment, one filed by Defendant Shan Jumper [72] and another filed by Defendants Joseph Hankins and Dale Kunkel [73]. Plaintiff has responded to Defendants' respective motions [79, 80], and Defendants have filed replies [82, 83]. Based on the parties' pleadings, depositions, affidavits, and other supporting documents filed with the Court, Defendants' respective motions for summary judgment are GRANTED.

## I. BACKGROUND

Plaintiff, Thomas A. Gauthier, proceeding pro se and civilly committed at the Illinois Department of Human Services (IDHS) Treatment and Detention Facility in Rushville, Illinois ("Rushville") filed suit under 42 U.S.C. § 1983, alleging that Defendants Shan Jumper, Joseph Hankins, and Dale Kunkel violated his constitutional rights. On January 11, 2016, after a merit review of Plaintiff's amended complaint [18], the Court entered an order [9], finding that Plaintiff stated the following constitutional claims: (1) Defendants Jumper and Hankins violated Plaintiff's constitutional rights when they were deliberately indifferent to his serious medical condition and applied black box restraints; and (2) Defendants Jumper and Hankins violated Plaintiff's constitutional rights when they used black box restraints and strip searches as

punishment when he appeared before the Behavior Committee. The Court found that Plaintiff failed to clearly state a constitutional violation against Defendant Kunkel because Plaintiff appeared to have named Kunkel as a defendant purely because of his supervisor position, which is insufficient to establish liability under § 1983. On May 3, 2016, Plaintiff moved this Court for leave to file a second amended complaint that alleged Kunkel was directly involved in the constitutional violations. The Court granted Plaintiff's motion, finding that Plaintiff adequately stated both claims against Kunkel. On April 17, 2017, Plaintiff filed a motion to voluntarily dismiss his claim concerning the strip searches [78], which the Court granted.

## II. MATERIAL FACTS

The following facts are recounted in the light most favorable to Plaintiff. *See Davis v. Carter*, 452 F.3d 686, 688 (7th Cir. 2006). Plaintiff has been detained at Rushville since October 28, 2011. (Pl.'s Dep. 5:5–7, ECF No. 72-1.) Defendant Jumper is employed by Liberty Healthcare Corporation as Rushville's clinical director, and he is also a member of Rushville's Behavior Committee. (Jumper Aff. ¶¶ 1, 10, ECF No 72-2.) Jumper, however, is not a medical doctor and does not treat residents at Rushville for their medical needs. (*Id.* ¶ 19.) Defendant Hankins is Rushville's public service administrator, and he is also a member of Rushville's Behavior Committee. (Hankins Interrog. Resp. ¶ 1, ECF No. 74-2.). Defendant Kunkel has been Rushville's security director since approximately 2014. (Kunkel Interrog. Resp. ¶ 1, ECF No. 74-1; Pl.'s Dep. 54:15–55:20.)

In 1996, Plaintiff was playing football with a group of friends. (Pl.'s Dep. 74:14–75:4.) When he went to tackle one of his friends, he missed and went through a glass window. (*Id.*) A piece of glass severed his right arm (requiring reconstructive surgery) and cut his left arm, causing nerve damage in both arms. (*Id.* at 10:6–12.) Between 1996 and 2000, Plaintiff attended

physical therapy for his arm injuries, twice per week for the first two years, then once per week after that. (*Id.* at 73:22–74:7.) After Plaintiff was incarcerated in 2000, he continued to go through physical therapy at the prisons until approximately 2007. (*Id.* at 10:21–11:1, 12:12–22.) Ever since he was injured in 1996, Plaintiff has been in "[a] lot of pain." (*Id.* at 10:17–20.)

When Plaintiff first became a resident at Rushville in 2011, he told Dr. Lochard, who is not a defendant in this case, about his past arm injuries and the pain he was experiencing. (*Id.* at 13:17–14:12.) Since that time, he has seen Dr. Lochard approximately thirty times, and Dr. Lochard has prescribed Plaintiff various medications for his nerve pain. (*Id.* at 14:7–9, 15:13–17.) No one else at Rushville has treated Plaintiff for any condition relating to his arms. (*Id.* at 16:17–20.) While at Rushville, Plaintiff has never been referred to a medical specialist for his arm complaints. (*Id.* at 71:8–11.)

Rushville officials utilize a handcuff cover known as a "black box," which is a plastic box that runs between the handcuffs and covers the key holes to prevent a resident from tampering with the locks.[1] (Jumper Aff. ¶ 5.) An IDHS Facility Directive authorizes the use of a black box when (1) the resident has been admitted to Rushville during the past sixty days, (2) the resident has one or more major rule violations[2] within the past three months, or (3) the resident has any other security risk or concern[3] that warrants the use of the black box when the resident is transported outside the facility. (IDHS Facility Directive 2–3, ECF No. 72-3.) Members of the Behavior Committee are tasked with determining whether or not a major rule violation occurred and, if so, what privilege restrictions are warranted, if any. (*Id.*; Jumper Aff. ¶ 11.) The members of the Behavior Committee then forward their recommendations to the Security Director and the

---

[1] A photograph of a black box can be found in the Seventh Circuit's opinion in *Davis v. Wessel*, 792 F.3d 793, 796 (7th Cir. 2015), although the black box Rushville utilizes may not be exactly the same.
[2] Major rule violations include, but are not limited to, sexual behavior/contact, security risk group, disruptive conduct/interfering with facility operations, staff manipulation, arson, dangerous contraband/disturbance, drugs and drug paraphernalia, escape, fighting, and intimidation/threats.
[3] A security risk or concern includes, but is not limited to, threats of elopement and aggression/violence.

Risk Assessment Team who have control and final authority over the implementation of security measures. (IDHS Facility Directive 3; Jumper Aff. ¶ 13.)

Between 2012 and 2015, the Behavior Committee cited Plaintiff for multiple major rule violations. (Pl.'s Dep. 33:17–20.) Plaintiff specifically remembers receiving major rule violations on March 16, 2012; October 1, 2012; June 4, 2013; October 22, 2013; December 23, 2013; January 3, 2014; and November 18, 2014. (*Id.* at 30:7–33:16.) The violations primarily involved threats and intimidation. (*Id.*) Every time Plaintiff appeared before the Behavior Committee, he pleaded with Defendants Jumper and Hankins not to recommend the use of the black box on him because it caused him pain as a result of the nerve damage in his arms. (*Id.* at 37:23–38:8; Pl.'s Aff. ¶ 5, Pl.'s Resp. Jumper Mot. Summ. J., Ex. C; Pl.'s Aff. ¶ 7, Pl.'s Resp. Hankins & Kunkel Mot. Summ. J., Ex. A.) Plaintiff told Defendant Kunkel about the nerve damage in his arms, but he never discussed it in relation to the black box and, in fact, never discussed the black box with Kunkel. (Pl.'s Dep. 57:2–12.) In response to Plaintiff's June 4, 2013, and November 18, 2014, major rule violations, the Behavior Committee recommended that the black box be used on Plaintiff. (Jumper Aff. ¶¶ 14–15.) Jumper states, "For medical reasons, the black box may not be required for a resident if there is a written order from the doctor at [Rushville]." (*Id.* ¶ 21.) Hankins states that "[i]f a resident has a medical exemption from [the b]lack [b]ox, the resident will not be placed in [a b]lack [b]ox regardless of a Behavior Committee recommendation." (Hankins Interrog. Resp. ¶ 8.) Hankins further states that "[t]o the best of [his] knowledge, the Writ Coordinator will verify that a resident does not have a medical exemption from [the b]lack [b]ox . . . ." (*Id.* ¶ 9.)

According to one of IDHS's "Notification of Resident Movement - Drop Slip" form filled out for Plaintiff, the black box was used on Plaintiff when he was transported on writs on

August 11 and 12, 2014; September 24, 2014; and November 3 and 14, 2014. (Drop Slip, ECF No. 72-8.) Plaintiff states that every time he was transported on a writ in 2013, he was handcuffed with the black box. (Pl.'s Dep. 54:8–10.) Moreover, Plaintiff states that between 2011 and 2015, he has been "continually subject to the [b]lack [b]ox." (Pl.'s Aff. ¶ 9, Pl.'s Resp. Jumper Mot. Summ. J., Ex. C.)

A Rushville doctor may grant a medical exception to a resident if there is a medical reason justifying why a black box should not be used on the resident. (IDHS Facility Directive 3.) During his time at Rushville, Plaintiff has asked Dr. Lochard "at least 20 times" to grant him a medical exception for the black box. (Pl.'s Dep. 69:20–70:1.) Dr. Lochard, however, refused to grant Plaintiff a medical exception. (*Id.* at 26:9–15.) Consequently, the black box was used on Plaintiff for four years, which eventually caused "permanent damage" in his right and left arms. (*Id.* at 18:6–20.) Although a doctor has not diagnosed Plaintiff with nerve damage above and beyond that caused by his original arm injuries, Plaintiff states, "I know there's permanent damage. I feel it. I drop things all the time like I never used to. And I told [Dr.] Lochard about it and he gave me braces to go on my hands so that I can hang on to things." (*Id.*) Plaintiff told Dr. Lochard about the permanent damage in 2015, at which time Dr. Lochard finally granted Plaintiff a medical exception for the black box. (*Id.* at 18:24–19:9; Jumper Aff. ¶ 22.) The black box has not been used on Plaintiff since that time. (Pl.'s Dep. 26:16–27:5.)

### III. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a genuine dispute through specific cites to admissible evidence or by showing that the nonmovant "cannot produce admissible evidence

to support the [material] fact." Fed. R. Civ. P. 56(c)(1). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.*; *Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

## IV. ANALYSIS

As a civil detainee, Plaintiff's deliberate-indifference claim and conditions-of-confinement claim arise under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's proscription against cruel and unusual punishment. *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013); *Sain v. Wood*, 512 F.3d 886, 893 (7th Cir. 2008). Despite this distinction, there exists "little practical difference between the two standards." *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). Thus, the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'" *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)).

### A. Deliberate Indifference to Plaintiff's Serious Medical Condition

Plaintiff alleges that Defendants Jumper and Hankins, as members of the Behavior Committee, recommended that the black box be used on him, and that Defendant Kunkel, as security director, approved the Committee's recommendation, thereby authorizing the use of the black box on him. (Pl.'s 2d Am. Compl. ¶¶ 5, 9, 16, ECF No. 27.) Plaintiff alleges that Defendants made these decisions despite knowing that he suffered serious pain every time the black box was used on him. (*Id.* ¶ 7.) Plaintiff further alleges that the use of the black box on him for four years caused permanent damage to his arms. (*Id.* ¶ 11B.)

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). For an official to be held liable, the medical need must be objectively, sufficiently serious, and the official must know of and disregard a substantial risk of serious harm to the detainee. *Farmer v. Brennan*, 511 U.S. 825, 834, 847 (1994). "Claims of deliberate indifference to medical needs are examined differently depending on whether the defendants in question are medical professionals or lay persons." *McGee*, 721 F.3d at 481. Non-medical defendants are entitled to rely on the opinions of medical professionals so long as they do not ignore a detainee. *Id.* at 483.

The Court will assume, without deciding, that Plaintiff's medical need was objectively serious because his claim fails on the subjective component of the test. The Court notes that, as in *McGee*, this case does not present questions about the adequacy of the treatment Plaintiff has received for his arm injuries. Rather, the medical "need" that Plaintiff claims Defendants were deliberately indifferent to is not a need for "treatment" per se, but a need for accommodation for

the pain the black box caused him. Thus, "the question is not whether [Defendants] were deliberately indifferent to [Plaintiff's arm injuries] but whether they were deliberately indifferent to the related, but distinct, problems about which [Plaintiff] complained." *Id.* at 481.

Regarding Defendant Kunkel, Plaintiff states that he never discussed with Kunkel that the black box caused him pain due to the nerve damage in his arms. In fact, Plaintiff never discussed the black box with Kunkel. Plaintiff does not otherwise present any evidence that Kunkel knew of Plaintiff's complaints regarding the black box. Without the required subjective awareness, Kunkel could not have acted with deliberate indifference. Therefore, the Court finds that no rational juror could conclude that Defendant Kunkel was deliberately indifferent to the pain that the black box allegedly caused Plaintiff.

Plaintiff's claims regarding Defendants Jumper and Hankins require more analysis. For his claims against Jumper and Hankins, Plaintiff presents evidence that they knew the black box caused him pain due to the nerve damage in his arms. Plaintiff thus argues that they acted with deliberate indifference when they ignored his pleas and nonetheless recommended that the black box be used on him as a disciplinary measure.

The Seventh Circuit has often repeated the standard that non-medical professionals are entitled to defer to the judgment of medical professionals *so long as they do not ignore the detainee*. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (quoting *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)); *see also Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (holding that defendants were not deliberately indifferent because they "investigated [the plaintiff's] complaints and referred them to the responsible medical providers"); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) (holding that defendant was not deliberately indifferent because he "did not disregard [the plaintiff's] complaints . . . [but] investigated the

situation, made sure that the medical staff was monitoring and addressing the problem, and reasonably deferred to the medical professionals' opinions"); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) ("Perhaps it would be a different matter if [the defendant] had ignored [the plaintiff's] complaints entirely, but we can see no deliberate indifference given that he investigated the complaints and referred them to the medical providers who could be expected to address [the plaintiff's] concerns.").

In all of the above-cited cases, however, the plaintiff's serious medical need was a need for present medical treatment, not a need to avoid future pain for which the facility had in place a procedure for avoiding such pain by obtaining a medical exception. Here, Jumper and Hankins present evidence that, regardless of the Behavior Committee's recommendations, Rushville security staff would not have used the black box on Plaintiff had a Rushville doctor granted Plaintiff a medical exception. Plaintiff has not presented any evidence to refute this. Furthermore, all parties agree that, even though Plaintiff requested a medical exception from Dr. Lochard "at least 20 times," Dr. Lochard refused to grant him an exception until 2015. (Pl.'s Dep. 69:20–70:1.) After Dr. Lochard granted Plaintiff a medical exception, the black box was no longer used on Plaintiff.

Thus, taking Plaintiff's version of events as true, as the Court must do at this stage, the evidence and case law present the following question: After Plaintiff told Defendants Jumper and Hankins that the black box caused him pain, (1) were they entitled to ignore Plaintiff's pleas and rely on Rushville's policy that the black box would not be used on him if a Rushville doctor had granted him a medical exception, or (2) were they required to investigate further and confirm whether Plaintiff had a medical exception before recommending that the black box be used on Plaintiff? Certainly, Defendants were entitled to rely on Dr. Lochard's opinion that Plaintiff's

medical condition did not warrant a medical exception *had they actually consulted Dr. Lochard*. Defendants, however, deny that Plaintiff ever told them that the black box caused him pain. Thus, Defendants did not actually rely on a medical professional's opinion in making their recommendation. The undisputed evidence, however, shows that Jumper and Hankins made their recommendation knowing that, regardless of a Behavior Committee recommendation, a resident would not be placed in a black box if a Rushville doctor had granted the resident a medical exception from the use of the black box.

In the specific context of a detainee who informs non-medical professionals that a facility's policy will cause the detainee future harm, two Seventh Circuit cases appear to point in opposite directions. In *McGee*, a Rushville detainee alleged that the security director was deliberately indifferent when the director required him "to wear leg irons on his swollen and possibly cancerous legs whenever he was transported from the Rushville facility." 721 F.3d at 477–78. Absent a medical order, the security director had sole authority to exempt a detainee from the leg shackle policy. *Id.* at 483. The security director did not grant the detainee an exception, though, because the detainee had previously escaped from a pair of handcuffs. *Id.* In reaching its conclusion that the security director had not acted with deliberate indifference, the Seventh Circuit pointed out that the security director "spoke with [the detainee] about the medical issues he had with his legs, examined [the detainee's] legs, and spoke with [the doctor] to determine the full extent of [the plaintiff's] medical issues." *Id.* The Seventh Circuit, however, did not clarify whether the security director was required to consult with the doctor first to not be deliberately indifferent.

In *Knight v. Wiseman*, 590 F.3d 458, 460 (7th Cir. 2009), the plaintiff, who was assigned to work camp duty, argued that the defendant-officers required him to work despite knowing that

he had a prior shoulder injury. The plaintiff, however, did not have any medical work restrictions on his record. *Id.* at 465. In the background section, the Seventh Circuit explained, "Assignment Officers determine the eligibility of inmates for work camp duty on the basis of several factors, paying particular attention to an inmate's medical condition. To that end, individuals who bear a work restriction issued by a licensed medical professional cannot transfer to the camp." *Id.* at 460. In reaching its conclusion that the defendants had not acted with deliberate indifference, the Seventh Circuit first noted that "[i]n every one of the cases [the plaintiff] cite[d] to support his appeal, a court permitted an Eighth Amendment claim to go forward based on compulsory work only for prisoners who had an active work restriction issued by a medical professional." *Id.* at 465. The Seventh Circuit then stated, "the record presented in this case shows that defendants . . . were entitled to rely and did rely on the . . . Assignment Officer's professional determination that [the plaintiff] did not face any medical obstacles to performing work camp duties." *Id.* at 465. The Seventh Circuit, however, did not indicate whether the defendants actually confirmed that the plaintiff did not have any medical work restrictions on his record. Given the facts that the Seventh Circuit selected to include in the background section, it appears that it was sufficient for the defendants to rely on the fact that "individuals who bear a work restriction issued by a licensed medical professional *cannot transfer to the camp*." *Id.* at 460 (emphasis added).

      The Court finds that the reasoning in *Knight* governs the present case. Defendants Jumper and Hankins did not have the duty to investigate whether there was a medical exception in Plaintiff's record before recommending that the black box be used on him. Similar to *Knight*, Jumper and Hankins were entitled to rely on the fact that residents who bear a medical exception issued by a Rushville medical professional *will not be placed in a black box*, regardless of the Behavior Committee's recommendations. Therefore, the Court finds that no rational juror could

conclude that Defendants Jumper and Hankins were deliberately indifferent to the pain that the black box allegedly caused Plaintiff.

Nonetheless, given the uncertainty of the present law as it applies to the specific facts of this case, the Court further bases its decision on the fact that Plaintiff is unable to prove causation. "A section 1983 action is a tort damage action even though the duty the defendant is alleged to have breached is created by the Constitution or federal law." *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). "A plaintiff may not recover damages for a constitutional tort without establishing causation in fact—i.e., that the defendant caused the claimed injury." *Beard v. O'Neal*, 728 F.2d 894, 898 (7th Cir. 1984). A plaintiff cannot "recover if the claimed injury would have occurred anyway." *Id.* at 899 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977); *see also Lossman v. Pekarske*, 707 F.2d 288, 291 (7th Cir. 1983) (stating that since "the same result presumably would have been reached . . . , the alleged denial of due process was not a necessary condition, or "but for" cause, of the [alleged harm]")

Here, even assuming that Defendants Jumper and Hankins violated their constitutional duty by ignoring Plaintiff's pleas and by failing to investigate whether he had a medical exception, Plaintiff cannot show that this violation was the "but for" cause of the black box being used on him. Plaintiff admits that every time Jumper and Hankins recommended that the black box be used on him, he did not have a medical exception. Consequently, even if Jumper and Hankins would have investigated further, they would have discovered that no Rushville doctor had granted Plaintiff a medical exception. Thus, there would have been no reason for them to change their recommendation that the black box be used on Plaintiff, and Plaintiff would have been in the same position as he is today. Therefore, the Court additionally finds that no rational

juror could conclude that, even if Defendants Jumper and Hankins had violated the Constitution, this violation was a "but for" cause of his alleged harm.

**B.     Use of Black Box Restraints as Punishment**

Plaintiff also alleges that Defendants Jumper, Hankins, and Kunkel utilized the black box as a form of punishment in violation of the Fourteenth Amendment. (Pl.'s 2d Am. Compl. ¶ 14.) "The Due Process Clause of the Fourteenth Amendment prohibits the use of bodily restraints in a manner that serves to punish a [civil] detainee." *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000). However, "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Bell v. Wolfish*, 441 U.S. 520, 540 (1979). Moreover, "[d]isciplinary measures that do not substantially worsen the conditions of confinement of a lawfully confined person are not actionable under the due process clause . . . ." *Miller v. Dobier*, 634 F.3d 412, 414–15 (7th Cir. 2011).

In *Miller*, the plaintiff, a civilly committed person at Rushville, was cited for threatening a deputy sheriff. 634 F.3d at 413. The disciplinary committee found that he had committed a major rule violation, and placed him on certain restrictions. *Id.* at 413–14. One of the restrictions included that he was required to be handcuffed with the black box on all trips outside the facility. *Id.* at 414. The plaintiff argued that he was denied procedural due process, but the district court held that he "was entitled to no procedural safeguards because the disciplinary measures to which he was subjected did not deprive him of liberty within the meaning of the due process clause." *Id.* In affirming the district court's decision, the Seventh Circuit held that the additional

restrictions placed on the plaintiff, including the use of the black box, were "too limited to amount to a deprivation of constitutional liberty." *Id.* at 415.

In *Levi v. Thomas*, 429 F. App'x 611, 611–12 (7th Cir. 2011), the plaintiff, also a civilly committed person at Rushville, brought a procedural and substantive due process claim against the defendants, arguing that his rights were violated when he was required to wear the black box on all off-site trips as a form of discipline for "staff manipulation," a major rule violation. The Seventh Circuit held that "[n]either [plaintiff's] procedural due process claim nor his substantive due process [claim] has merit because . . . the black box restraint does not affect any protected liberty interest." *Id.* at 612–13.

Moreover, multiple "black box" cases in this district have been decided in favor of the defendants, in accordance with *Miller* and *Levi*. *See Johnson v. Louck*, No. 13-3420, 2015 WL 5462222, at *2 (C.D. Ill. Sept. 16, 2015); *McCabe v. Phillips*, No. 08-CV-3091, 2012 WL 4471113, at *4 (C.D. Ill. Sept. 26, 2012); *Lurz v. Saddler*, No. 11-CV-3396, 2012 WL 3060161, at *2 (C.D. Ill. July 26, 2012); *Davis v. Phillips*, No. 09-CV-3336, 2012 WL 912857, at *6 (C.D. Ill. Mar. 16, 2012). Therefore, the Court finds that no rational juror could conclude that the use of the black box on Plaintiff violated the Due Process Clause of the Fourteenth Amendment.

**IT IS THEREFORE ORDERED:**

1) Defendants' respective motions for summary judgment [72, 73] are GRANTED pursuant to Federal Rule of Civil Procedure 56. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff. The case is terminated, with the parties to bear their own costs. All deadlines and internal settings are vacated. All pending motions not addressed in this Order are denied as moot. Plaintiff remains responsible for any unpaid balance of the filing fee.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (stating that an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith"); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

December 6, 2017                                                s/ James E. Shadid
ENTERED                                                            JAMES E. SHADID
                                                                           UNITED STATES DISTRICT JUDGE